UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
|     CHARLES A. SISSON, ) | Case No. 06-10676-SSM |
| ) | Chapter 11 |
|                 Debtor ) | |
| ) | |
| DENVER CONDOMINIUM UNIT OWNERS ) | |
| ASSOCIATION ) | |
| ) | |
|                 Movant ) | |
| ) | |
| vs. ) | |
| ) | |
| CHARLES A. SISSON ) | |
| ) | |
|                 Respondent ) | |

**MEMORANDUM OPINION**

Before the court is a motion by the Denver Condominium Unit Owners Association ("the Association") for summary judgment granting relief from the automatic stay to exercise control over three (or possibly six) parking spaces located within a condominium. The ultimate question is whether the parking spaces are owned by the debtor or by the Association. The answer depends on whether the condominium declaration—which designates the spaces as limited common elements—substantially complies with the relevant provisions of the District of Columbia Condominium Act, D.C. Code § 42-1902.01 *et seq.* The Association contends that it does not, and that the parking spaces are general common elements, not property of the debtor. For the reasons stated, the court agrees with the Association and will grant the requested relief.

1

Background

Charles A. Sisson ("the debtor") has been employed as an economist at the International Monetary Fund located in Washington, D.C., for almost 30 years. Additionally, for the last 20 years he has been involved in the real estate business: buying, rehabilitating and reselling over 80 residential properties. On June 23, 2006, he filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Although he initially remained in control of his estate as debtor in possession, the court ultimately directed that a trustee be appointed, and Robert O. Tyler has qualified as chapter 11 trustee in the case. A modified chapter 11 plan proposed by the trustee was confirmed on June 11, 2007. Relevant to the present controversy, the plan provides for the trustee to sell certain real property owned by the debtor—specifically including "P.H.2 @ 1417 Chapin Street, NW, Washington, D.C. (including as many as 6 parking spaces on the premises of this property)"—in order to pay allowed claims. Plan § 4.02.

The building at 1417 Chapin Street was developed as a 27-unit condominium known as "The Denver" by a limited liability company known as 1417 Chapin Street, LLC, formed by the debtor, who also served as its manager. A declaration for The Denver was signed on October 24, 2002. Among other provisions, the declaration contains a section captioned "Limited Common Elements" which reads, "The Limited Common Elements of the Condominium, as reflected on the plats, are as follows: 11 spaces on the first floor and 13 balconies/decks accessible only from individual units." Denver Condominium Declaration §6.2. The plat itself was recorded on May 2, 2003, among the land records of the District of Columbia. The first floor (i.e., the ground

level) of the condominium is depicted on page 3 of the plat and shows ten parking spaces labeled "PARKING #1, L.C.E." through "PARKING #10, L.C.E."[1]

All of the units have now been sold, including a unit known as PH-2 that was conveyed to the debtor. Four of the ten parking spaces were sold to various owners at the time they purchased their units. The deed to unit PH-2 does not reference any parking spaces passing with the unit, but the court is advised that a written assignment was executed assigning to the debtor all the parking spaces that had not previously been sold. (There is a dispute as to whether that number is three or six, but for the purpose of this opinion the number is unimportant and does not affect the analysis.) The assignment is not recorded in the land records. In the schedule of assets filed by the debtor on July 21, 2006, he listed a claim against the Association for $240,000. Although the basis of the claim is not described in the schedules, it apparently relates to the parking spaces at issue. On March 15, 2007, the Association filed the motion for relief from the automatic stay that is presently before the court. The motion seeks a determination that the parking spaces are not the debtor's property, but general common elements that may be transferred by the Association.[2] The trustee has not filed an opposition to the motion, but the debtor opposes relief and asserts that the spaces in question are his property.

Discussion

---

[1] The discrepancy between the 11 "spaces" referred to in the declaration and the 10 parking spaces shown on the plat is unexplained.

[2] The Association has also filed a proof of claim (Claim No. 9) asserting an unsecured claim in the amount of $573,995. Of this amount, $120,000 relates to the three parking spaces that are the subject of the motion for relief from stay. The debtor has filed an objection to the claim.

3

A.

Although no party has raised the issue, the court has considered as a threshold matter whether the automatic stay is even in effect. The filing of a bankruptcy petition creates an automatic stay of a broad range of actions, including any act to exercise control over property of the estate or to enforce a prepetition claim against property of the debtor. § 362(a)(3) and (6), Bankruptcy Code. The stay continues in effect, as to property of the estate, until the property is no longer property of the estate. § 362(c)(1), Bankruptcy Code. It continues as to the debtor until he or she is granted or denied a discharge. § 362(c)(2)(C), Bankruptcy Code.[3] The Fourth Circuit has ruled that in a chapter 11 case, the automatic stay terminates upon confirmation of a plan. *Dept. of Air Force v. Carolina Parachute Corp*., 907 F.2d 1469 (4th Cir. 1990). That ruling, however, does not take into account the changes to the chapter 11 discharge regime made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8, 119 Stat. 23 ("BAPCPA"). Prior to BAPCPA, confirmation of a chapter 11 plan discharged the debtor from any debt that arose before the date of confirmation. § 1141(d)(1)(B), Bankruptcy Code. It also, unless otherwise provided in the plan or confirmation order, vested all of the property of the estate in the reorganized debtor. § 1141(c), Bankruptcy Code.

For corporations, the effect of confirmation remains largely unchanged by BAPCPA. But for individual debtors, confirmation no longer operates as a discharge, and a discharge is granted only after all payments under the plan are completed, which might be years down the

---

[3] Although the automatic stay terminates upon discharge, the discharge itself operates as an injunction against debt collection efforts. § 524(a)(2), Bankruptcy Code.

road.  § 1141(d)(5)(A), Bankruptcy Code.  Additionally, the confirmed plan in the present case did not provide for property of the estate to be vested in the reorganized debtor; rather, the chapter 11 trustee, as liquidating agent, retained control of the debtor's interest (whatever it might be) in unit PH-2 and the parking spaces for the purpose of paying allowed claims.  Accordingly, the court concludes that the automatic stay remains in full force and effect notwithstanding confirmation of the plan.

### B.

At the request of an affected party, the automatic stay may be annulled, terminated, modified, or conditioned for "cause."  § 362(d)(1), Bankruptcy Code.  The term "cause" is not defined by the Bankruptcy Code, but the Fourth Circuit has explained that it requires the court "[to] balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied."  *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992).  The debtor does not dispute that a determination that the Association's rights to the parking spaces are superior to his would be sufficient grounds for termination of the stay.   Accordingly, the court proceeds to a consideration of just what interest the debtor had in the disputed parking spaces on the date the chapter 11 petition was filed.

### C.

It is essential to distinguish a limited common element ("LCE") from a general common element ("GCE") before further discussing the complexities of this case.  As defined by the Condominium Act, an LCE is a portion of the common elements reserved for the exclusive use

of those entitled to the use of one or more, but less than all, of the units.  D.C. Code § 42-1901.02(19).  A GCE, by contrast, is any and all portions of the condominium other than the units and the designated LCEs.  D.C. Code § 42-1901.02(1).

The District of Columbia Condominium Act requires that a condominium declaration contain, among other things,

> (4) A description or delineation of any limited common elements not covered by § 42-1902.06(5), *showing or designating the unit or units to which each is assigned*;
>
> (5) A description or delineation of all common elements . . . which may subsequently be assigned as limited common elements, together with a statement that they may be so assigned *and a description of the method whereby any such assignments shall be made. . . .*  The description of the method whereby an assignment shall be made *shall include* the following information:
>
>> (A) the name of any person who may assign the limited common elements;
>>
>> (B) the name of any person who must execute the assignment;
>>
>> (C) Whether or not the deed to a condominium unit will reflect the assignment, if previously made; and
>>
>> (D) If there is any limited common expense payable by the unit owners of a condominium unit to which the limited common elements pertain[.]

D.C. Code § 42-1902.10(a)(4) and (5) (emphasis added).  In the present case, the declaration and plat, taken together,[4] amply satisfy the requirement for "description or delineation" of the

---

[4] *See* D.C. Code § 42.1902.07, which provides in relevant part, "The condominium instruments shall be construed together and shall be deemed to incorporate one another to the extent that any requirement of this chapter as to the content of one shall be deemed satisfied if the deficiency can be cured by reference to any of the others."  *See also Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n,* 548 A.2d 87, 91 (D.C. 1988) (explaining that the condominium declaration, bylaws, sales agreements, and the relevant statutes must be construed as a whole); *Jurgensen v. The New Phoenix Atlantic Condominium Council of Unit Owners,* 843 A.2d 865 (Md. 2004) (holding that LCEs may be identified in the condominium declaration or

parking spaces as limited common elements.  They are described ("11 spaces") in the declaration and shown (albeit only 10 in number) on the plat which is referenced in the declaration. What is entirely lacking in both the declaration and plat, however, is "a designation of the unit or units to which each is assigned" or "a description of the method whereby any such assignments shall be made."

The question before the court is whether the failure to comply with the statutory requirements for designation of an LCE renders the purported assignment of the parking spaces to the debtor invalid.  In this connection, the District of Columbia Condominium Act clearly protects purchasers and sellers against "insubstantial" failure of condominium instruments to comply with the Act.  D.C. Code § 42-1902.08(e) ("Title to a condominium unit and common elements is not rendered unmarketable or otherwise affected by reason of an insubstantial failure of the condominium instruments to comply with this chapter.").  Whether the failure of condominium instruments either to designate the unit to which an LCE is assigned or to state how such an assignment will be made constitutes a "substantial" failure to comply with the statutory requirements has not been addressed by any reported decision in the District of Columbia.   Case law from other jurisdictions, however, emphasize that because condominiums are creatures of statute, statutory requirements must be closely adhered to.  *Woodside Village Condomonium Ass'n, Inc. v. Jahren,* 806 So.2d 452, 456 (Fla. 2002); *County Green Village One Owner's Ass'n, Inc. v. Meyers,* 281 S.E.2d 346 (Ga. Ct. App. 1981) (holding that condominium was not created when declaration did not use the word "condominium" as required by the Georgia Condominium Act).  Particularly where, as here, there are only 10 parking spaces within

---

on the condominium plat).

the condominium for 29 unit owners, it would surely be material to a potential purchaser whether the spaces were assigned to particular units or, if they could later be assigned to particular units, how and by whom the assignment would be made. Under the circumstances, the court cannot find that the failure of the declaration and plat to designate the unit or units to which the parking spaces were assigned or to describe the method whereby the assignment would be made represents an "insubstantial" failure to comply with D.C. Code § 42-1902.10(4) or (5); quite the contrary. Because condominiums are creatures of statute, and because the attempt to designate the parking spaces as LCEs falls substantially short of what the controlling statute requires, the court concludes that the spaces are not LCEs but, by default, constitute GCEs that are owned in common by all the unit owners and are subject to the Association's control.

## Conclusion

For the foregoing reasons, the court will grant the Association's motion for summary judgment and will enter an order terminating the automatic stay with respect to the parking spaces claimed by the debtor to allow the Association to exercise control over them in accordance with District of Columbia law.

Date: _____          _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge

Copies to:

Brent C. Strickland, Esquire
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street, Suite 1800
Baltimore, Maryland 21202-1626
Counsel for the movant

Bruce W. Henry, Esquire
Henry, O'Donnell, Dahnke, and Walther, P.C.
4103 Chain Bridge Road, Suite 100
Fairfax, VA  22030
Counsel for the debtor

Robert O. Tyler, Esquire
Tyler, Bartl, Gorman & Ramsdell, PLC
700 S. Washington Street, Suite 216
Alexandria, VA  22314
Chapter 11 trustee

Frank Bove, Esquire
Office of the United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314